JERRY OLIVE, PLAINTIFF IN ERROR, VS. THE STATE
OF FLORIDA, DEFENDANT IN ERROR.

1. Jurors stated that they had formed opinions of the guilt or inno-
cence of the accused from having heard what purported to be
a detailed statement of the facts of the killing, but not from
the witnesses, and if taken into the jury box would carry in
their minds the opinions they had formed, and assuming the
evidence to be as detailed to them, they were then ready to
render a verdict, but that they could readily and unhesitat-
ingly render a verdict according to the evidence in the case if
taken on the jury, notwithstanding the opinions they then en-
tertained: *Held,* That they were competent jurors.

2. Jurors stated that they could render a fair and impartial verdict
according to the evidence; that they had no conscientious scru-
ples against the infliction of capital punishment, but that they
would not find a man guilty on circumstancial evidence only
in cases where the penalty was death. The court excused
the jurors on peremptory challenge of the State: *Held,* Not to
be error.

3. It is not error for the court to charge the jury that the statement
of the prisoner is evidence before them, to be allowed such
weight, and such only, as they saw fit to give it.

4. The trial court has the power during the term of court to amend
its record made at the former term so as to speak the truth as to
what actually transpired at that term.

5. Evidence in this case considered sufficient to sustain the ver-
dict.

Writ of Error to the Circuit Court for Jackson
county.

The facts of the case are stated in the opinion of
the court.

*D. L. McKinnon* for Plaintiff in Error.

*W. B. Lamar, Attorney-General,* for Defendant in
Error.

MABRY, J.:

The plaintiff in error was indicted, tried and convicted in Jackson county for the murder of Molly Olive, and has sued out a writ of error from the judgment of the court imposing the death sentence upon him.

The first error assigned is, that the court erred in overruling defendant's challenge to three jurors named. The record recites that in empanneling the jury three jurors (giving their names) stated on their *voir dire* that they had formed opinions as to the guilt or innocence of the defendant from having heard what purported to be a detailed statement of the facts and circumstances of the killing, but did not hear said statement from the witnesses. They further stated that if taken into the jury box they would carry on their minds the opinions they had formed, and, assuming the evidence to be as detailed to them, they were then ready to render a verdict; but that they could readily and unhesitatingly render a verdict according to the evidence in the case if taken upon the jury, notwithstanding the opinions they then entertained. The defendant challenged the jurors for cause, and his challenge being overruled took an exception. It further appears that defendant used nine peremptory challenges before the panel was completed, and only one of the three jurors challenged by him sat upon the jury.

In O'Connor vs. State, 9 Fla., 215, a juror was declared competent who stated that he had formed an opinion as to the guilt or innocence of the prisoner, but that such opinion was based upon mere rumor; that he had not heard the witnesses or any one speak of the matter by detailing any of the facts or circum-

stances connected with the killing as of their own knowledge; that it would require evidence to remove the opinion so formed upon rumor, but that if taken upon the jury, he could readily and without hesitation find a verdict according to the evidence, although that verdict might be contrary to the opinion so formed on rumor. The principle announced in O'Connor's case, that where a juror's conceptions are not fixed and settled, nor warped by prejudice, but are only such as would naturally spring from public rumor or newspaper report, and his mind is open to the impressions it may receive on the trial, so as to be convinced according to the law and the testimony, he is not incompetent, was approved in the case of Montague vs. State, 17 Fla., 662.

In Andrews vs. State, 21 Fla., 598, a juror was held competent who stated that he had formed and expressed an opinion from rumor, and had not conversed with the witnesses, that his opinion would yield readily to evidence, but stated further that he would rather not have heard what he did hear, if he had to go into the jury box. In the same case another juror stated that he had formed and expressed an opinion as to the guilt or innocence of the accused, but such opinion was not formed from hearing or conversing with the witnesses in the case; that if he went into the jury box he would give a verdict according to the evidence; that it would take a reasonable amount of evidence; that it would take conclusive evidence to change his mind. He was held incompetent.

In English vs. State, 31 Fla., 340, 12 South. Rep., 689, the juror stated that he had formed and expressed an opinion as to the guilt or innocence of the prisoner, but that his opinion was not of a fixed nature, and that he would be governed by the evidence. He further

stated that it would require evidence to change his opinion, and being asked if he would be influenced by the opinion he had, or would be guided entirely by the evidence which would be allowed to go to the jury, said he would be governed by the evidence allowed to go to the jury by the court. He was held competent.

The fixedness or strength of the existing opinion is the essential test of a juror's competency, and the court should look specially to such state of mind in passing upon the question of qualification. "If such impressions become fixed and ripen into decided opinions, they will influence a man's conduct, and will create, necessarily, a prejudice for or against the party towards whom they are directed, and should disqualify him as a juror; but if, in obedience to the laws of his organization, his mind receives impressions from the reports he hears, which have not become opinions fixed and decided, he would not be disqualified." O'Connor vs. State, *supra*. It is contended by counsel for plaintiff in error, and correctly too, that the statement of a juror that he can readily render a verdict according to the evidence, notwithstanding an opinion entertained, will not alone render him competent if it otherwise appears that his formed opinion is of such a fixed and settled nature as not readily to yield to the evidence. The second juror referred to in the Andrews case had formed an opinion not from talking with the witnesses, and said he could render a verdict according to the evidence, but he also stated that it would take conclusive evidence to change his mind. If his opinion was so fixed as to require conclusive evidence to change it, it could not, in the nature of things, be such as to readily yield to the evidence in the case. The jurors in the case before us had formed opinions from hearing

what purported to be a detailed statement of the kill-
ing, but did not hear it from the witnesses, and they
said that they would carry such opinions into the jury
box if accepted as jurors. They also stated that they
could readily and unhesitatingly render a verdict ac-
cording to the evidence in the case, notwithstanding
the opinions they then entertained. If the above was
all the evidence on the question of the jurors' compe-
tency, it is entirely clear that, according to the rule
announced in the decisions referred to, they would not
be disqualified. There would be nothing to show that
the opinions formed from sources other than from the
witnesses were of such a character as would not readily
yield to the evidence in the case, as the jurors in effect
said they would. The jurors further stated in the
same connection that, assuming the evidence to be as
detailed to them, they were then ready to render a
verdict. It will be noted that they did not state that
they were ready to render a verdict on the opinions
they had formed, but their readiness to act was upon
the assumption that the evidence in the case was such
as they had heard detailed. If the evidence in the
case was not such as had been related to them, there is
nothing to indicate that they would not act upon the
evidence alone, and that their former opinions based
upon a state of facts shown to be incorrect would not
readily give way to the testimony on the trial. In our
opinion the statement of the jurors that, assuming the
evidence to be as detailed to them, they were ready to
render a verdict, is not sufficient to show that the
opinions formed from hearing a detailed statement of
the killing, not from the witnesses, were of such a
fixed and settled character as not to yield readily to
the evidence, and that they could not do what they
state they could—readily and unhesitatingly render a

verdict according to the evidence, notwithstanding the opinions they had formed.

The second assignment of error is, that the court erred in sustaining the State's challenge for cause as to two jurors named. It appears from the bill of exceptions that two jurors testified on their *voir dire* they could render a fair and impartial verdict according to the evidence; that they had no conscientious scruples against the infliction of capital punishment, but would not find a man guilty on circumstantial evidence only in cases where the penalty was death The jurors were challenged by the State for cause and excused by the court. They state positively that they would not find a man guilty on circumstantial evidence alone in cases where the penalty was death. The statute (sec. 2850 R. S.), provides that "no persons whose opinions are such as to preclude him from finding any defendant guilty of an offense punishable with death shall be allowed to serve as a juror on the trial of any capital case." The death penalty can be inflicted in cases of conviction on proper circumstantial evidence, as well as on direct testimony, and a juror who would not find a verdict of guilt in such cases is excluded by the statute from serving as a juror on the trial of any capital case. Metzger vs. State, 18 Fla., 481. The case before us depends largely on circumstantial evidence, and there was no error in the ruling of the court rejecting the jurors.

The third assignment of error is expressly abandoned.

Upon the fourth assignment of error, which is the overruling of defendant's motion for a new trial, counsel discusses, first, the sufficiency of the evidence to sustain the verdict. After a careful examination of the evidence we find no authorized ground for holding

that it was not sufficient to sustain the verdict. That there was testimony sufficient, if true, to connect the accused with the killing, is clear, and its credibility was a question for the jury. Under the well established rule of this court as to the effect of a verdict, and when it can be set aside as against the evidence, or not supported by the evidence, we are not authorized to disturb the verdict on the testimony in the record before us. In the next place it is insisted that the court erred in giving the following portion of its charge to the jury, *viz:* "The statement of the prisoner is evidence before you, to be allowed such weight, and such only, as you see fit to give it." In Bond vs. State, 21 Fla., 738, it was decided that the statement of the prisoner is evidence for the consideration of the jury alone, and to be allowed such weight, and such only, as they see fit to give it. The objection urged to the portion of the charge mentioned is that the use of the words "such only," coming from the court was calculated to cast discredit upon the statement of the accused. It is not shown or contended that any unusual or undue stress or emphasis was placed upon the words by the court, but the objection extends no further than that the words mentioned coming from the court naturally tend to discredit the prisoner before the jury. We do not think so. The court must not comment on the prisoner's statement, but we see no objection to stating to the jury just what the law authorizes, that is, that the prisoner's statement is evidence before them, and to be allowed such weight, and such only, as they see fit to give it.

The fifth and sixth assignments of error will be considered together. The fifth is, that the court erred in

hearing and determining the motion for a new trial
without the presence of the accused; and the sixth is,
that the court erred in amending the record at a sub-
seqent term of court so as to make it appear that the
accused was personally present when the motion for a
new trial was argued and denied.   The record shows
that the jury returned a verdict against the accused
during a term of court on the 17th day of November,
1893, and he was on that day remanded to the custody
of the sheriff to await the further order of the court.
On the 28th day of the same month the minutes in the
cause recite that "this cause coming on to be heard
upon motion for a new trial, and after argument of
counsel, the court being advised of its opinion, it is or-
dered that said motion be overruled, to which de-
fendant excepted, and gave notice of application for
a writ of error."   On a subsequent day, the defendant
being in open court, sentence was passed upon him,
and time was given to prepare and present a bill
of exceptions.   During the next term of the court,
the defendant being present in person and by at-
torney, the State Attorney made a motion that the
minutes of the court made at the former term in
reference to the motion for a new trial be amended
so as to speak the truth, and to show that the accused
was personally present in court at the time said motion
was made and the proceedings thereon.   The record
recites that the motion to amend the minutes having
been argued by counsel for the State and defendant,
and it appearing to the court that the defendant was
personally present in court when the motion for a new
trial was made in November, 1893, it is ordered that
the minutes of the term held in November, 1893, in
said cause, be amended to read as follows, viz:   "Now
at this day came the State of Florida, by her attorney,

and the defendant being at the bar in custody, and the
motion of defendant for a new trial coming on to be
heard, after argument of counsel for the State and the
prisoner, on consideration thereof, it was considered
by the court that said motion for a new trial be denied,
to which defendant excepted, and gave notice of ap-
plication for writ of error." It was questioned in
Irvin vs. State, 19 Fla., 872, whether the presence of
the accused was necessary during the hearing of a mo-
tion for a new trial, but without stopping to decide
this point, and without inquiring whether the recital
in the original order denying the motion for a new
trial that the defendant excepted thereto is sufficient
of itself to show the personal presence of the accused
at the time, we entertain no doubt about the power of
the trial court during the subsequent term to amend
its records so as to speak the truth, and to show what
did actually take place during the hearing upon the
motion. Stephens vs. Bradley, 23 Fla., 393, 2 South.
Rep., 667; Brown vs. State, 29 Fla., 494, 11 South.
Rep., 181. In the latter case it is said by Chief-Justice
Raney for the court that "it was entirely competent
for the State to have had the record of that tribunal,
(the court that tried the cause) if it did not speak the
truth, amended while the proceedings were pending
here, and by bringing the amended record here they
could have arrested our action on the original record
before we rendered judgment." The record in the case
before us was amended on motion, and the defendant
was present in person and by counsel, and, as it ap-
pears from the order of the court, the amendment was
in accordance with facts as they existed at the time the
original motion was heard and overruled. There was
no error in this. There is no contention that the record
as amended does not show a personal presence of the

accused when the motion for a new trial was denied; and considering the record as amended, as we must do, there is no error in the particular mentioned.

We have examined all the assignments of error presented by counsel for plaintiff in error and find no error in them. The judgment will therefore be affirmed.