John **HITCHMON**

v.

**UNITED STATES of America, et al.**

Jesse **FUSSELL**

v.

**UNITED STATES of America, et al.**

Nos. 81–2016–CIV–JAG, 81–1973–CIV–JAG.

United States District Court, S.D. Florida.

April 16, 1984.

Richard B. Marx and Law Offices of Richard B. Marx, Miami, Fla., for plaintiffs.

Stanley Marcus, U.S. Atty., S.D. Fla., and Marc Fagelson, Asst. U.S. Atty., Miami, Fla., for defendants.

NORTHROP, Senior District Judge, Sitting by Designation.

## I. FACTUAL BACKGROUND

The above-captioned litigation arises from an arrest on April 25, 1975, at approximately 12:30 a.m., and from the events surrounding that arrest.[1] On April 24, 1975, Drug Enforcement Administration ("DEA") Special Agents Herbert Williams and John Andrejko commenced a surveillance at Miami International Airport of the Pan American warehouse, in response to a tip that a large load of marijuana was being smuggled into the country from Jamaica. The agents watched the warehouse from their car parked nearby. At trial, the agents testified that late that evening, plaintiffs, and a Vincent Hall, drove up in a green Volkswagen and Hitchmon and Hall disembarked and approached the government vehicle. Fussell remained behind. The agents further testified that Hall tapped on the vehicle window with his loaded shotgun, while Hitchmon stood at the front left poised with his automatic pistol. At the Volkswagen, Fussell pointed a revolver at them. Hall then ordered the agents to get out. According to Williams and Andrejko, one of the three men remarked that the agents were not who they expected. Plaintiffs and Hall then turned away and drove off. The agents successfully pursued the three men and placed them under arrest. The weapons were retrieved; Hitchmon, Fussell and Hall were

---

1. Differences between the parties concerning the precise nature of the events are immaterial as this motion to dismiss involves only the issue of timeliness and facts relating to this question are uncontested.

arrested for assault on federal officers. Thereafter, 3,600 pounds of marijuana were found and seized from the Pan American warehouse.

Plaintiffs have presented a different version of the facts. Their story appears to have changed several times. Essentially, they claim to have learned about the smuggling, and to have gone to the warehouse with the hopes of stealing the marijuana. Plaintiffs deny having made any assault upon the agents and contend to have been chased by the DEA agents and then arrested, without having made provocation.

On October 30, 1975, after a two-day trial, a jury convicted plaintiffs and Hall; on February 11, 1976, they were sentenced to imprisonment for four years.[2] On July 27, 1976, the Court of Appeals for the Fifth Circuit affirmed the convictions in an unreported opinion, *see United States v. Hitchmon*, 536 F.2d 1386 (5th Cir.1976), and rejected plaintiffs' claims of false arrest. Plaintiffs began serving their sentences on or about August 25, 1976. After plaintiffs continued to maintain they were falsely arrested and that the agents committed perjury at trial, the DEA and United States Attorney's Office investigated their claims and determined them to be unfounded. Still, on August 25, 1977, Judge Aronovitz ordered a new trial, after which, on May 25, 1977, plaintiffs were again found guilty. On appeal this time, however, the Fifth Circuit reversed the convictions and remanded for a new trial. The Court held that cross examination had been unreasonably and harmfully curtailed. *United States v. Hitchmon*, 609 F.2d 1098 (5th Cir.1979). Shortly thereafter, the United States dismissed the indictments. Plaintiffs were released after having served two and one-half years of their four-year sentences.

On August 22, 1980, plaintiffs filed an administrative claim with the DEA, alleging a tort claim based upon the allegedly false arrests of August 25, 1975. On September 14, 1981, Hitchmon and Fussell brought suit pursuant to 28 U.S.C. § 2680(h) of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671–80. Of the original seven-count complaint, only those counts for false arrest and false imprisonment remain.

The government has now moved to dismiss for lack of subject matter jurisdiction. The issue before the Court is whether this action, filed on September 14, 1981 and alleging tortious conduct committed in August, 1975, is time barred by the statute of limitations. To resolve this question, the Court must determine when the cause of action accrued. Defendants submit the relevant measuring date is the day of arrest. Plaintiffs contend their cause of action accrued on April 2, 1980, the date the indictments against them were dismissed. This Court has carefully considered all submissions of counsel and finds no merit to plaintiffs' contentions. Finding no need for oral argument on this motion, plaintiffs' request therefore is denied. Local Rule 10 B.

## II. FEDERAL TORT CLAIMS ACT

### A. Jurisdictional Prerequisites

■ A jurisdictional prerequisite to the filing of an FTCA suit in federal district court is the filing of an administrative claim. *See e.g., Employees Welfare Committee v. E.H. Daws*, 599 F.2d 1375 (5th Cir.1975); *Kielwien v. United States*, 540 F.2d 676 (4th Cir.1976); *Painter v. Federal Bureau of Investigation*, 537 F.Supp. 232 (N.D.Ga.1982). The statute governing this prerequisite and its statute of limitations reads in pertinent part:

... an action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been

---

2. At that point, Hall became a fugitive.

finally denied by the agency in writing and sent by certified or registered mail. 28 U.S.C. § 2675(a).

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing by certified or registered mail, or notice of final denial of the claim by the agency to which it was presented. 28 U.S.C. § 2401(b).

The government contends that plaintiffs' claims accrued on the day of the arrest, or April 25, 1975. Since plaintiffs did not file their administrative complaint until five years later, or August 22, 1980, the government submits that this action is untimely.

■ Plaintiffs' response is twofold. First, plaintiffs urge the Court to read § 2401(b) as mandating the filing of a claim against the United States within two years after the claim accrues *or* within six months after such claim has been denied by the proper administrative agency. Plaintiffs thus argue that even if the claim accrued on the date of arrest, as long as suit was filed in federal district court within six months of an agency's denial, compliance with the statute has been effectuated. Plaintiffs' arguments ignore well-established case law in addition to the clear language of the statute. Quite simply, the Court is without jurisdiction to entertain this action unless the claim was presented to the proper administrative agency within two years of the accrual of the claim. *See e.g., Employees Welfare Committee v. E.H. Daws*, 599 F.2d 1375 (5th Cir.1975); *College v. United States*, 572 F.2d 453 (4th Cir.1978); *Crown Coat Front Co. v. United States*, 395 F.2d 160 (2d Cir.), *cert. denied*, 393 U.S. 853, 89 S.Ct. 123, 21 L.Ed.2d 122 (1968). Plaintiffs' first argument merits no further discussion.

### B. Accrual of Claim

■ Next, and alternatively, plaintiffs contend that their claims accrued on April 2, 1980, the date the indictments against them were dismissed. Were this in fact the correct measuring date, then this action, filed on September 4, 1981, six months within the denial of the administrative claim on May 22, 1981, would indeed be timely. In support of their position, plaintiffs: (1) attempt to distinguish the cases cited by the United States; (2) advance a continuing tort theory; and (3) argue that the "unusual and extenuating circumstances" of this case require a waiver of the "technical" compliance with the FTCA. As to this last argument, without addressing whether there exist herein any "unusual or extenuating circumstances," it bears repeating that the jurisdictional prerequisites are not "technical" procedures to be disregarded at the whim or discretion of this Court. These prerequisites must be strictly construed and cannot be waived. *United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979).

■ In this circuit, as well as in the majority of federal courts, to determine when a claim accrues under 28 U.S.C. § 2401(b), federal law is controlling.[3] *Beech v. United States*, 345 F.2d 872 (5th Cir.1965); *Quinton v. United States*, 304 F.2d 234 (5th Cir.1962). This question is resolved by focusing on state law to determine *whether* in fact any substantive claim has accrued against the government that would enable the claimant to sue under the FTCA while examining federal law to pinpoint *when* the claim accrued. *Quinton v. United States*, 304 F.2d 234 (5th Cir.1962); *Coyne v. United States*, 411 F.2d 987 (5th Cir.1969). There are no reported decisions with respect to when a claim, brought under 28 U.S.C. § 2680(h) for false arrest and imprisonment, accrues. Resort to both state precedent and analogous federal law is thus necessary to resolve this issue. *See*

---

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this circuit adopted as binding precedent all decisions of the Fifth Circuit handed down before October 1, 1981.

*United States v. Reid,* 251 F.2d 691 (5th Cir.1958); *United Missouri Bank South v. United States,* 423 F.Supp. 571 (W.D.Mo. 1976); *Jackson v. United States,* 182 F.Supp. 907 (D.Md.1960).

### 1. Florida Law of False Arrest and Imprisonment

 In Florida, a cause of action for false arrest and false imprisonment accrues on the day of arrest. *Leatherwood v. City of Key West,* 347 So.2d 441 (Fla. App.1977), *cert. denied,* 358 So.2d 131 (Fla. 1978); *Gordon v. City of Belle Glade,* 132 So.2d 449, 451–53 (Fla.App.1961). In *Gordon,* the court rejected appellant's argument that his cause of action had not accrued until the final determination of his criminal proceedings, at which time his conviction was reversed. Similarly, the *Leatherwood* court ruled that the day of arrest, not the day of release from incarceration, is the day on which the plaintiff's cause of action for false arrest and imprisonment accrued.

Plaintiffs acknowledge the existence of the rule clearly set forth in these cases, yet cite *Davis v. Combination Awning and Shutter Co.,* 62 So.2d 742 (Fla.1953), as having carved out an exception to that rule. Plaintiffs fail to explain how a case decided in 1953 carved out an exception to cases decided in 1961 and 1977. Indeed, plaintiffs merely quote language out of context from an inapposite decision. In *Davis,* which involved a workmen's compensation claim, the court noted that under certain circumstances, where the defendant's actions have provoked the pendency of litigation, the statute of limitations might be tolled. That rule was not triggered in *Davis,* which affirmed the lower court's order that the claim was time-barred. Any continuing tort theory based on this case, or based on plaintiffs' unawareness of the alleged torts (a basis utterly controverted by the facts) is hereby rejected.

### 2. Analogous Federal Cases

· In further support of its position, the government has cited numerous federal civil rights decisions involving allegations of false arrest and imprisonment. These cases commence the running of the state statutes of limitation from the date of arrest or first date of incarceration. *See Mulligan v. Schlachter,* 389 F.2d 231 (6th Cir.1968);[4] *Henig v. Odorioso,* 385 F.2d 491 (3d Cir.1967), *cert. denied,* 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166 (1968); *see also Getz v. Bruch,* 400 F.Supp. 1033 (E.D. Pa.1975) (where alleged false arrest precedes alleged false imprisonment, statute of limitations runs from day of arrest even though false imprisonment alleged to be continuing wrong); *Hileman v. Knable,* 266 F.Supp. 317 (M.D.Pa.1967) (where civil rights action involves allegations of false arrest, false imprisonment, and wrongful prosecution, statute of limitations runs from date of arrest).

Of particular interest is *Knowles v. Carson,* 419 F.2d 369 (5th Cir.1969) in which the court rejected the argument that the statute of limitations runs from release, or from the dismissal of a wrongful conviction. *Knowles* involved an alleged intentional and continuing conspiracy to deprive the plaintiff of his civil rights. Accordingly, the court looked to the "last overt act" which it deemed to have occurred on the date Knowles was formally charged. *Id.* at 370. *See also, Brewster v. Woodward & Lothrop, Inc.,* 530 F.2d 1016 (D.C.Cir.1976) (diversity action which held that lower court's new trial order followed by a *nol. pros.* did not toll statute of limitations which commenced running on the date of arrest).

### 3. Federal Law under the Federal Tort Claims Act

Decisions under the FTCA have adopted the general proposition that a claim accrues when an injury is inflicted. *Steele v. Unit-*

---

**4.** Defendants miscited *Mulligan v. Schlachter,* 389 F.2d 231 (6th Cir.1968) in their initial pleading as "389 F.2d 231." As a consequence, plaintiffs have moved to strike *Mulligan* and the argument supporting its relevancy to the case at bar. Inasmuch as minimal effort is involved to learn the citation of a federal decision, the Court will deny plaintiffs' request.

*ed States,* 599 F.2d 823 (7th Cir.1979); *Barrett v. Hoffman,* 521 F.Supp. 307, 315–18 (S.D.N.Y.1981); *Camire v. United States,* 489 F.Supp. 998, 1001 (N.D.N.Y.1980); *see* Restatement (Second) of Torts § 899, comment c (1977).

In the context of medical malpractice, the Supreme Court has addressed the issue of claims accrual under § 2401(b). In *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the seminal case in this area, the Court held that a plaintiff's FTCA claim for injury stemming from malpractice accrues when he knows, or reasonably should know, of the existence and cause of his injury. Knowledge of the fact of injury is the focal point; whether the plaintiff is aware of a legally compensable harm is irrelevant.

In *Beech v. United States,* 345 F.2d 872 (5th Cir.1965), the Court held that a personal injury claim asserted under the FTCA accrues immediately upon the plaintiff's knowledge of the fact of some injury. The ultimate extent of damages need not be known before the statute is triggered. Here, plaintiffs were aware back in April, 1975, of the injuries of which they now complain. That plaintiffs' alleged damages continued throughout and beyond their incarceration provides no discernable basis in case law or statutory law for tolling the statute of limitations.

## III. CONCLUSION

The Court finds that plaintiffs' claims of false arrest and false imprisonment accrued on April 25, 1975. As plaintiffs waited nearly five years to file an administrative claim, they failed to comply with the statutory period mandated by 28 U.S.C. § 2401(b). Accordingly, this Court lacks subject matter jurisdiction over this action and the claims must be dismissed.

A separate Order will be entered confirming the within ruling.